UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL G.,

                Plaintiff,            **DECISION AND ORDER**

      v.

                                   6:24-CV-06069 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

# INTRODUCTION

Represented by counsel, plaintiff Michael G. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted, and Plaintiff's motion (Dkt. 6) is denied.

# BACKGROUND

Plaintiff filed his application for SSI on March 5, 2021. (Dkt. 5 at 14, 213-19).[1] In his application, Plaintiff alleged disability beginning January 1, 2016. (*Id.* at 14, 213).

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

- 1 -

Plaintiff's application was initially denied on June 1, 2021. (*Id.* at 14, 92-103). A telephone hearing was held before administrative law judge ("ALJ") Jude Mulvey on January 6, 2023. (*Id.* at 14, 35-62). On January 31, 2021, the ALJ issued an unfavorable decision. (*Id.* at 14-22). Plaintiff requested Appeals Council review; his request was denied on December 7, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he

deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## **DISCUSSION**

**I.   The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 5, 2021, the application date. (Dkt. 5 at 16).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of posttraumatic stress disorder. (*Id.*). The ALJ further found that Plaintiff's history of stab wounds to his face, collar, and posterior left shoulder areas and the medically determinable impairments of hypertension, gastroesophageal reflux, benign colon polyps, hemorrhoids, and a low back problem were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*

at 17). The ALJ particularly considered the criteria of Listing 12.15 in reaching her conclusion. (*Id.* at 17-18).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> he can perform simple, routine and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions and few, if any, workplace changes; he can have occasional interaction with supervisors, coworkers, and the public.

(*Id.* at 18). At step four, the ALJ found that Plaintiff has no past relevant work. (*Id.* at 21).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of laundry laborer, cleaner II, and dishwasher. (*Id.*). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 22).

II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ (1) erred in her analysis of the severity of Plaintiff's lumbar spine impairment; and (2) failed to properly evaluate the medical opinion of his treating therapist. (Dkt. 6-1 at 7-15). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

A.  **<u>Severity Determination</u>**

Plaintiff argues that the ALJ erred at step two by failing to find Plaintiff's lumbar spine impairment to be a severe impairment, or to incorporate limitations arising from that impairment into the RFC.  The Court disagrees.

At step two, "[a]n impairment is 'severe' if it 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Eralte v. Colvin*, No. 14 Civ. 1745(JCF), 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) (quoting 20 C.F.R. § 404.1520(c)).  "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citations omitted). "[T]he severity prong is intended as a *de minimis* standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.'" *Vicari v. Astrue*, No. 1:05-cv-4967-ENV-VVP, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)); *see also Melendez v. Comm'r of Soc. Sec.*, No. 17-CV-299-FPG, 2020 WL 4274510, at *2 (W.D.N.Y. July 24, 2020) ("In other words, the analysis at step two is a threshold test designed to screen out *de minimis* or totally groundless claims."  (quotations and citations omitted)); *Cooper v. Berryhill*, No. 17-CV-6782-JWF, 2019 WL 1233686, at *1 (W.D.N.Y. Mar. 15, 2019) ("Although plaintiff bears the burden of proof at step two, it is not a heavy burden.").

"When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that [the omitted condition] should not be included as a severe impairment." *Eralte,* 2014 WL 7330441, at *10 (quotation and

citation omitted); *see also Cwiklinski v. Comm'r of Soc. Sec.*, No. 18-CV-1204-FPG, 2020 WL 1131223, at *3 (W.D.N.Y. Mar. 9, 2020) ("Where a claimant produces some evidence of an impairment, the Commissioner may conclude that the impairment is non-severe only where the medical evidence 'establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" (quoting SSR 85-28, 1985 WL 56856, at *3 (1985))).  However, "any error at step two is rendered harmless when the ALJ finds that a claimant has other severe impairments and proceeds through the later steps of the sequential analysis." *Herman S. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 190, 197-98 (W.D.N.Y. 2022); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding any step two error harmless where ALJ considered the impairments at subsequent steps); *Roane v. O'Malley*, No. 22 CIV. 10704 (AEK), 2024 WL 1357845, at *5 (S.D.N.Y. Mar. 29, 2024) ("Specifically, '[w]hen an [ALJ] identifies some severe impairments at step two, and then proceeds through the sequential evaluation on the basis of the combined effects of all impairments, including those erroneously found to be non-severe, an error in failing to identify all severe impairments at step two is harmless.'" (quoting *Girao v. Kijakazi*, No. 22-CV-1419 (JLC), 2023 WL 5312064, at *13 (S.D.N.Y. Aug. 18, 2023))).

> In finding Plaintiff's low back impairment to be non-severe, the ALJ stated:
>
> Imaging of the lumbar spine in 2017 did show abnormal findings at some levels (Exhibit 10F), and at that time he had pain with range of motion of the lower back.  However, no surgery has been recommended nor has there been significant ongoing treatment for a back problem in recent years; while an April 2022 report indicates that the claimant had bilateral lumbar tenderness, he had full range of motion and no pain with range of motion, and straight leg raise was negative.  I further note that [Plaintiff] indicated in a disability

>report (Exhibit 2E) that he was disabled solely by mental impairments, which he confirmed in his testimony.

(Dkt. 5 at 17).

A lack of continued treatment was an appropriate consideration for the ALJ in assessing the limitation's severity. *See Susan B. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 225, 235 (D. Vt. 2021) (finding that lack of consistent treatment supported conclusion of non-severity); *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (holding that ALJ properly found plaintiff's physical conditions non-severe where they were controlled or minimally treated). Similarly, while Plaintiff testified at the hearing that his back still hurts "here and there," he acknowledged that he was pursuing his disability claim for mental health concerns. (Dkt. 5 at 54). This was consistent with the information he provided in Plaintiff's disability report in response to a question asking a claimant to list "all of the physical or mental conditions (including emotional or learning problems) that limit your ability to work," and Plaintiff only identified mental impairments. (*Id.* at 255). The Court accordingly finds no error in the ALJ's determination of the severity of Plaintiff's low back impairment.

Additionally, even if the Court agreed that the ALJ erred in his severity determination, any such error is harmless if the ALJ continues on to consider the non-severe impairments at the subsequent steps of the analysis. *See Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *3 (W.D.N.Y. Aug. 7, 2018) ("Moreover, '[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings. . . . [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds

through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless.'" (quoting *Snyder v. Colvin*, No. 5:13-CV-585 (GLS/ESH), 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014)), *aff'd*, 778 F. App'x 75 (2d Cir. 2019).

Here, the ALJ indicated in her decision that she "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity." (Dkt. 5 at 17). And as is evident, the ALJ considered Plaintiff's medical records containing information about his low back impairment in deciding that it did not impose work-related limitations. The ALJ also addressed the prior administrative medical findings that Plaintiff did not have any physical limitations. (*Id.* at 63-71, 73-82). In addition, the ALJ's decision addressed Plaintiff's capabilities in the context of his activities of daily living. This was consistent with the ALJ's determination not to include any limitations in the RFC specifically related to this impairment.

To the extent that Plaintiff's argument can be read to suggest that the ALJ was required to include any limitations in the RFC related to his back impairment, "the law only requires the ALJ to *evaluate* non-severe impairments in the RFC analysis, not to include limitations in the RFC. . . . To hold otherwise would defy logic: *requiring* an ALJ to limit a claimant's ability to work due to a non-severe impairment suggests that the non-severe impairment causes significant work limitations, which runs counter to the non-severity finding." *Catherine Jean D. v. Comm'r of Soc. Sec.*, No. 20-CV-1581-FPG, 2022

WL 4115367, at *3 (W.D.N.Y. Sept. 9, 2022) (citation omitted); *see also Christian H. v. Comm'r of Soc. Sec.*, No. 20-CV-1490MWP, 2022 WL 3648022, at *4 (W.D.N.Y. Aug. 24, 2022) ("Although an ALJ must account for limitations caused by both severe and nonsevere impairments in formulating the RFC, . . . if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not err by formulating an RFC without mental limitations or restrictions.") (citation omitted)); *Maura B. C. v. Comm'r of Soc. Sec.*, No. 5:21-CV-0294 (DEP), 2022 WL 2789102, at *6 (N.D.N.Y. July 15, 2022) ("'While the analysis at steps two and three concerns the *functional* effects of mental impairments, the RFC analysis at step four specifically considers *work-related* physical and mental activities in a *work setting*,' such that 'a finding at steps two or three does not automatically translate to an identical finding at step four.'" (quoting *Wells v. Colvin*, 87 F. Supp. 3d 421, 436 (W.D.N.Y. 2015))).

Because no functional limitations were identified, any failure to discuss the impairments further was harmless in any event. *See Amparo v. Comm'r of Soc. Sec.*, No. 20-CV-10285 (JMF) (SDA), 2022 WL 3084482, at *11 (S.D.N.Y. July 19, 2022) ("[A]n ALJ's failure to mention non-severe impairments in formulating the RFC may be considered harmless error 'absent evidence that these impairments contributed to any functional limitations.'" (quoting *Ferreras-Matos v. Comm'r of Soc. Sec.*, No. 20 CIV 07106 (NSR)(JCM), 2021 WL 7287630, at *15 (S.D.N.Y. Nov. 15, 2021), *report and recommendation adopted*, 2022 WL 3084380 (S.D.N.Y. Jan. 31, 2022)).

Overall, the objections raised by Plaintiff as to the sufficiency of the ALJ's severity determination amount to his disagreement with how the ALJ considered and resolved

evidence in the record, which does not warrant remand. *See Danielle B. v. Comm'r of Soc. Sec.*, No. 19-CV-0996MWP, 2021 WL 766857, at *7 (W.D.N.Y. Feb. 26, 2021) ("In sum, plaintiff's challenge amounts to a disagreement with the ALJ's consideration of conflicting evidence. '[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position.'" (quoting *Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *6 (N.D.N.Y. Nov. 18, 2016), *report and recommendation adopted*, 2016 WL 7238947 (Dec. 13, 2016))).

### B.     Evaluation of Medical Opinions

Plaintiff's next argument is that the ALJ failed to evaluate the medical opinions of his treating counselor, Alex Bissell, LMHC, in accordance with the regulations.

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support

or contradict a medical opinion or prior administrative medical finding." *Id.* at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at § 416.920c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id.* at § 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion.

20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how she considered the remaining factors. *Id.*

The ALJ addressed several medical opinions in her decision. LMHC Bissell provided an assessment in March 2021 that opined that Plaintiff was moderately (or more) limited in all areas of cognitive, social, and adaptive functioning. The ALJ explained his reasoning for finding LMHC Bissell's opinion less persuasive than that of Danielle Jones, LMHC, Plaintiff's therapist who completed several employability assessments dated January 2020, March 2020, and October 2020:

> [LMHC Bissell's opinion] is not fully consistent with the treatment notes and with the multiple assessments from Ms. Jones. Further, the assessment from therapist Bissell is a checkbox form that does not contain a category for a mild impairment (that is, the form jumps from "no evidence of limitation" to "moderately limited- unable to function between ten and twenty-five percent of the time", whereas the forms completed by Ms. Jones categorized a moderate limitation as being between five and ten percent of the time.

(Dkt. 5 at 20).

The opinions from LMHC Jones indicate that Plaintiff's mental status was stable with conservative treatment, and that there were no negative side effects from his medications. LMHC Jones opined that, at most, Plaintiff was moderately limited (defining "moderate" in the form as between five and ten percent of the time) in the ability to handle normal work stress and to work in coordination with or proximity to others without distraction, and that Plaintiff had no limitation or a mild limitation (defining "mild" as less than five percent of the time) in his ability to follow, understand, and perform tasks, to respond appropriately to co-workers and supervisors, to maintain attention and

concentration for rote tasks, regularly attend to a routine, and maintain a schedule. (*Id.* at 19).

In addition, an opinion from consultative examiner, Christine Ransom, Ph.D., indicated that Plaintiff had moderate limitations interacting adequately with supervisors, coworkers, and the public, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, and regulating emotions, controlling behavior, and maintaining well-being. Dr. Random opined that Plaintiff had no limitation in maintaining personal hygiene and appropriate attire, taking appropriate precautions, understanding, remembering, or applying simple and complex directions and instructions, and using reasoning and judgment to make work-related decisions. (Dkt. 5 at 20).

The Court has reviewed the opinions offered by the mental health providers and finds that the ALJ's assessments of the opinions are proper and well-supported by the record. Although Plaintiff argues that the ALJ's assessment of these opinions was conclusory and that the ALJ relied on selectively chosen evidence to reject LMHC Bissell's opinions, those arguments are not supported by the record.

First, the written determination includes a lengthy discussion of Plaintiff's mental health treatment. The ALJ referred to this evidence when evaluating the opinions offered by Plaintiff's therapists. In addition, and as further explained below, to the extent that the limitations assessed conflicted, resolution of conflicts in the record are for the ALJ to resolve. In addition, to the extent that LMHC Bissell's opinion was offered on fill-in-the-blank or check-box forms, with little to no explanation of why significant restrictions were

assessed, it was not error for the ALJ to discount its significance. *See Goodale v. Astrue*, 32 F. Supp. 3d 345, 358 (N.D.N.Y. 2012) (ALJ did not err by giving little weight to treating physician's opinion that used a "check box" form that counsel had provided).

To the extent that Plaintiff points to evidence in the record that the ALJ did not specifically discuss, it is clear from the written determination that the ALJ considered Plaintiff's reports of his symptoms when assessing the RFC. The ALJ is not required to discuss every shred of evidence in the record in reaching a conclusion—rather, the ALJ must articulate how the disability determination is supported by substantial evidence, and provide an explanation that allows for meaningful review on appeal. *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." (citation omitted)). The ALJ did so in this case, and Plaintiff's arguments amount to no more than mere disagreement with how the ALJ weighed the opinion evidence. Accordingly, remand is not required on this basis.

In sum, Plaintiff's arguments regarding the ALJ's evaluation of opinion evidence amounts to no more than his disagreement with the ALJ's conclusions, and this is not a basis for reversal. *See, e.g., Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 29, 2025
       Rochester, New York